## McNeal *v.* Farmers' Market Company, Appellant.

*Landlord and tenant—Option to renew lease—Partnership—Unincorporated associations—Parties—Practice, C. P.*

1. Where two partners take a lease with an option of renewal from an unincorporated association, and one partner sells out to the other, and the latter gives notice of renewal to the secretary of the association, who acting within the scope of his powers accepts the notice and agrees to the renewal, the association will not be heard to object that a covenant to renew a lease to more than one lessee cannot be enforced by one of them for himself.

2. Where a landlord is sued in trespass for an eviction and a failure to perform a covenant to renew a lease, evidence that the tenant who had leased the premises for a skating rink had conducted a disorderly house in violation of the laws of chastity, and of the liquor laws of the commonwealth, is admissible to show that the tenant was not entitled to recover damages for injuries to a business conducted in violation of law; and this is especially the case where the tenant is permitted to show the amount of his business, and his receipts therefrom.

*Practice, C. P.—Parties—Unincorporated associations—Trespass.*

3. An action of trespass may be maintained against the president, secretary and the directors, named as such, of an unincorporated association, where it appears that the defendants sued were responsible for the tortious act of which complaint is made.

Argued March 16, 1910. Appeal, No. 19, March T., 1910, by defendant, from judgment of C. P. Dauphin Co., June T., 1908, No. 483, on verdict for plaintiff in case of H. B. McNeal v. Farmers' Market Company, an unincorporated association, Joseph Strickler, President, Joseph N. Lauman, Secretary, Eugene Laverty, John J. Landis, Jacob Epler, Samuel Shank, Directors of said association. Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for an alleged wrongful eviction. Before KUNKEL, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the court excluded under objection and exception a large amount of testimony offered for the purpose of showing that the skating rink was run in an improper and immoral way and that liquors were there sold in violation of the liquor laws of the state. [6–12]

When the plaintiff was on the stand the following offer was made:

Mr. Wickersham: We propose now to show by the witness on the stand that the latter part of June of 1907, he and Mr. Houck had some difficulties, and it became important and necessary that they should dissolve, that he conferred with Mr. Lauman about it, and Mr. Lauman said, " Go ahead, buy him out and I will stand by you; " that thereafter he bought him out and continued to operate the rink himself, paying the rent therefor, which rent was accepted by the Market House Company.

Mr. Hargest: We object to the offer as made, because the defendant is not concerned with any difficulties between these partners.

Mr. Wickersham: It is offered for the purpose of showing that after July 9, 1907, H. B. McNeal became sole owner of the Excelsior Rink Company and succeeded to the rights of the parties on this lease, and was so recognized by the defendant.

Mr. Hargest: That is objected to as irrelevant, immaterial and incompetent, unless it be shown that Lauman had authority to speak for the defendant.

It is further objected to, that even if true, it gives no right to this plaintiff to insist upon a privilege after the expiration of the first term.

The Court: We will receive the offer, and we will determine its effects afterwards. Exception to the defendant. [4]

Mr. Wickersham: If the court please, we propose to show that he told Mr. Lauman that he intended to avail himself of the privilege of retaining the premises for two years in addition to the one that he had, and Mr. Lauman said that was satisfactory, but asked him to waive the right to use the market house on Friday evening, because it gave some trouble to the market people the next morning. He said he would agree to continue for the balance of the two years, using the market house all of the time mentioned in the original lease except Friday evening, and in consideration of his agreeing to that, Mr. Lauman agreed that the rent should be $62.50 instead of $75.00 a month; that this agreement having been reached, Mr. McNeal dictated to his stenographer an agreement to renew the lease for two years, which was read over to Mr. Lauman, and which he said was all right; this for the purpose of showing that Mr. McNeal notified the defendant that he intended to avail himself of the additional two years' privilege mentioned in the original lease.

The Court: What time?

Mr. Wickersham: Some time in January, 1908. The date is not on the paper.

Mr. Hargest: That is objected to as incompetent and irrelevant, because it is not offered to be shown that

Lauman had any power or authority from the market company to grant any term whatever, and that the offer is not an offer to show the exercise of a privilege under the terms of this lease; and further, no offer to show any waiver of the fact that Lauman had no such authority by any subsequent conduct; and further that the offer was made by a different lessee and not by the person to whom the original lease was given.

The Court: We overrule the objection and receive the offer. Exception to the defendant. [5]

The court charged in part as follows:

[The defendant, the market company, is not a corporation. It is an unincorporated association. As we understand, it is composed of certain persons who united themselves for the purpose of transacting and running a market house, transacting a certain business with respect to a market house. As far as we are advised, there is no limitation upon their liability. They are a body of persons unincorporated, associated together, for the transaction of certain business. Lauman is their secretary; Lauman is one of the company; one of the unincorporated body, and we must say to you that it is a general principle of law, when persons act together in the transaction of business, that each one is the agent of the other within the scope of the business mutually being transacted. In other words, if persons act together and become partners, the one partner is the agent of the other partner or of the other members of the partnership within the scope of the business of the partnership. He is able to bind the partnership or the other members of the firm by his acts, if the acts be within the scope of the partnership business, and we are bound to say that to you, because here you have the defendants who are not an incorporated body. Substantially they are partners, and the act of one within the scope of the business in which they are mutually engaged, binds the rest, whether he had previous authority or not, whether he has had ex-

press authority or not. The one partner is the agent of the other in the transaction of the partnership business, and as long as the matters he does are within the scope of the business of the partnership, he binds the other members of the partnership without any previous authority and without any express authority, so far as regards his dealings with any third person.] [1]

[But in order that the firm should not be bound by the act of the partner acting without authority, without express authority, it must be shown that the person with whom he acted knew that he had not such authority. The law is, as we said before, that one partner is the agent of the partnership, of the other partners, and if he acts within the scope of the partnership business and what he does is a partnership transaction, it binds the other members of the partnership.] [2]

Verdict and judgment for plaintiff for $1,250. Defendant appealed.

*Errors assigned* among others were (1, 2) above instructions, quoting them; (4–12) rulings on evidence, quoting the bill of exceptions.

*W. M. Hargest*, of *Hargest & Hargest*, for appellant.— The action at law did not lie against the association: Fairweather v. Rorke, 18 Pa. Dist. Rep. 1003; Fletcher v. Gawanese Tribe, 9 Pa. Superior Ct. 393; Maisch v. Order of Americus, 223 Pa. 199; McDonnell v. Jones, 24 Pa. C. C. Rep. 40.

The defendant contends that the vile, unlawful and immoral use to which the plaintiff subjected the defendant's premises could be shown: Long v. Fitzimmons, 1 W. & S. 530.

The provision in the lease which in terms is "with the privilege of three years" is a part of the contract made not between the market company and McNeal, but between the market company and Houck and McNeal. The lessees were joint lessees, they were partners. Neither of them could claim the exercise of the option for him-

self alone nor could any such claim be enforced against the lessor, the market company: Howell v. Behler, 41 W. Va. 610 (24 S. E. Repr. 646); Finch v. Underwood, L. R. 2 Ch. Div. 310.

*Edward E. Beidleman*, with him *Frank B. Wickersham*, for appellee.

OPINION BY RICE, P. J., July 20, 1910:

The written lease of the premises from which the plaintiff claimed in this action of trespass that he was unlawfully evicted was executed by the Farmers' Market Company, an unincorporated association, by Joseph Lauman, its secretary, as lessor, and H. B. McNeal and H. S. Houck, as lessees. The term was one year from March 1, 1907, with privilege of three. It appears that McNeal and Houck were partners in a skating rink business conducted on the premises, and that in July, 1907, McNeal bought out Houck and thereafter had exclusive possession of the premises and conducted the business and paid the rent individually. At midnight on February 29, 1907, the term of one year ending at that time, the lessors evicted McNeal, and later he brought this action.

The lease, as we have seen, was for one year with privilege of three. This gave the lessees an option, and, assuming that it was exercisable by McNeal alone, there was ample evidence that he exercised it in due season by express notice to Lauman, the secretary and treasurer of the association, who, moreover, had acted for the association in making the lease, in collecting the rent, and in other negotiations regarding the use of the premises. We deem it unnecessary to recite the conflicting evidence bearing upon the question of the exercise of the option; it is enough to say that the court submitted the question to the jury and that the evidence was sufficient, if believed by them, to sustain a finding that the option was exercised.

But the appellant's counsel argue that a covenant to renew a lease to more than one lessee cannot be enforced

by one of them for himself.  On the other hand, it is contended, and evidence was given to show, that before buying out Houck, McNeal consulted Lauman, the secretary and treasurer of the association, who told him to go ahead and that he would stand by him, and that, acting on this inducement, McNeal bought out Houck and thereafter held exclusive possession of the premises, paying the rent, with the acquiescence of the lessors.  There was evidence also tending to show that when McNeal gave notice of his intention to hold the premises for the three years this was not only assented to by Lauman acting for the association, if not by other officers of the association, but that a change in some of the terms of the lease were then agreed to.  Applying the well-understood principle as to the authority of a partner to act for the partnership in matters within the general scope of the business, the court held that the question whether Lauman had authority to substitute the plaintiff for the original tenants named in the lease was for the jury under the evidence.  In this we see no error.  There was ample evidence to sustain a finding that the transactions were within the scope of the business of the partnership, for that is what the association was, and that Lauman in his dealings with the plaintiff was acting within the scope of his authority as secretary and treasurer of the association and that his acts were acquiesced in.  It was perhaps too broad a statement of the question to say, as was said at the conclusion of the instructions complained of in the third assignment of error, that "the question comes down practically to this, whether Lauman, the agent of these defendants, accepted McNeal as a substitute for or in place of the tenants originally named in this lease," and to that extent this assignment of error is sustained; but that the general question, as above stated, was for the jury we concur with the learned trial judge.

It is further contended, upon the authority of Fletcher v. Gawanese Tribe, 9 Pa. Superior Ct. 393, and Maisch v. Order of Americus, 223 Pa. 199, that an action at law

could not be maintained and therefore the request for binding instructions should have been granted. The point decided in those cases was that, as the statutory law of Pennsylvania now stands, an unincorporated beneficial association may not be sued in assumpsit in its collective capacity or name for an obligation of the organization. We think those decisions are not applicable to the present case. This was an action of trespass. The names of the defendants as they stood on the record of the court below were, "Farmers Market Company, an unincorporated association, Joseph Strickler, president, Joseph N. Lauman, secretary, Eugene Laverty, John J. Landis, Jacob Epler, Samuel Shank, directors of said association." Service of the summons was accepted for all of the defendants, and a general appearance and plea of "not guilty" were entered for them. In the cases cited it was held that the proper method of suing such association is to institute a suit in equity against some of the members as representing themselves and all others having an interest, and, after judgment, to compel the defendants to see that the treasury of the association pays the claim. This remedy would be wholly inappropriate to recover damages for a tort committed by members of an unincorporated association organized for profit. There was evidence that the defendants sued were responsible for the tortious act complained of, and, if this were the only question in the case, the judgment entered against them ought not to be disturbed.

The evidence offered in the sixth, seventh, ninth, tenth, eleventh and twelfth assignments taken collectively would tend to show that notwithstanding the lessees' covenant "that they will use and occupy the said premises as a roller skating rink and for no other different object or purpose," the plaintiff conducted a disorderly house in violation of the laws of chastity and the liquor laws of the commonwealth. Whether or not the evidence would have come up to the offers and would have justified a forfeiture of the lease and a refusal to permit a renewal

of the lease at the end of the year, are questions the decision of which may well be postponed until the facts are fully developed and established. But the evidence was offered not merely to show a right of forfeiture, but for the purpose of showing that the plaintiff was not entitled to recover damages for injuries to a business conducted in violation of law, and for that purpose we think the evidence was competent, particularly in view of the manner in which the plaintiff presented his case upon the question of damages. While the plaintiff was. not permitted to recover his profits as such, yet he was permitted to show the amount of business he did and his receipts therefrom, and the jury were instructed that they might consider in determining the value of his leasehold the business that was done, the nature, amount, and profits, as throwing some light on the value of the leasehold or the value of his term. But if he conducted an illegal and immoral business the receipts or the profits would be no test of the value of the term. For the same purpose and reason that the evidence adduced by the plaintiff was admitted, that offered by the defendant ought also to have been admitted.

We will not discuss the assignments of error further in detail. We have sufficiently indicated the grounds upon which our conclusion that the cause must be sent back for a retrial rests.

The judgment is reversed and a venire facias de novo awarded.